IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CENTRAL ILLINOIS CARPENTERS HEALTH & WELFARE FUND, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 07-3121 ) |
| J.L.H. INTERIOR CONSTRUCTION, INC., and HICKS CONSTRUCTION, INC., | ) ) ) ) ) |
| Defendants. | ) |

**OPINION**

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (d/e 14) (Motion). Plaintiffs (Funds) operate multiemployer employee benefit welfare plans qualified under the Employee Retirement Incomes Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq. The Funds allege that the Defendants' employees are participants in the plans operated by the Funds and that the Defendants are obligated to submit to the Funds regular reports and contributions. The Funds allege that the Defendants have breached their obligations. The

1

Defendants move to dismiss for failure to state a claim. For the reasons set forth below, the Motion is DENIED.

## STATEMENT OF FACTS

For purposes of the Motion, the Court must accept as true all well-pleaded factual allegations contained in the Amended Complaint and draw all inferences in the light most favorable to the Funds. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Court may also take judicial notice of matters of public record. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994). When read in that light, the Amended Complaint must set forth a short and plain statement of the claim showing that the Funds are entitled to relief. Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, __ U.S.__, 127 S.Ct. 1955, 1969 (2007); Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC, 499 F.3d 663 (7th Cir. 2007).

The Funds allege that from March 25, 2005, to September 30, 2006 (Audit Period), Defendant J.L.H. Interior Construction, Inc. (JLH), had a Collective Bargaining Agreement (CBA) with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO. Under the terms of the CBA,

2

JLH's covered employees were participants in the ERISA qualified plans operated by the Funds. JLH was also obligated to comply with the terms of the Funds, including filing regular reports, submitting to audits, and making contributions to the Funds for each covered employee for each hour worked by that employee. During the Audit Period, JLH and Defendant Hicks Construction, Inc. (HCI) were two corporations that had an interrelation of operations, common management, centralized control over labor relations, common ownership and common employees. The Amended Complaint alleges that, by virtue of these connections and interrelationships, JLH and HCI were a single employer for purposes of ERISA.

The Funds conducted an audit of the books and records of the Defendants to determine compliance with their alleged obligations to the Funds. The result was an Audit Report. <u>Amended Complaint</u>, Exhibit C, <u>Statement of Additional Reportable Hours Due for JLH Interior Const. – Hicks Construction for the Period March 25, 2005 to September 30, 2006 (Audit Report)</u>.[1] The Audit Report stated, in part:

> We were instructed by the Fund to perform a payroll compliance examination on JLH Interior Construction, a

---

[1] The exhibits were filed as attachments to the original Complaint (d/e 1), and incorporated by reference into the Amended Complaint.

3

> signatory Employer to the Fund. However, we were informed by JLH Interior Construction's accountant and by Mr. Michael Hicks, the President, that JLH Interior Construction had no payroll or employees for the period 2002, 2003, 2004, 2005, and 2006.
>
> Further, we learned that Mr. Michael Hicks, owned and operated a non-union company, Hicks Construction, FEIN 37-1345166. We were allowed access to the payroll records for this Company. All hours and liability shown as due herein are hours worked by employees and subcontractors of Hicks Construction.

Amended Complaint, Exhibit C, Audit Report, at 4, note 1. The audit revealed that all of the hours at issue were listed on the payroll records of HCI as work performed by HCI employees. JLH did not have payroll records.

The Funds' counsel corresponded with the Defendants before and after the audit. Amended Complaint, Exhibit D, Correspondence Between attorney Britt W. Sowle and Michael J. Hicks dated December 4, 2006, February 14, 2006, and March 7, 2007. The March 7, 2007, letter (Letter) from the Funds' counsel to Michael Hicks at JLH, stated, in part:

> Previously, the Fund had requested various records related solely to JLH Interior Construction ("JLH") due to the fact that entity was signatory to a residential agreement with the Mid Central Illinois Regional Council of Carpenters. You had stated JLH "never got off the ground" and thus had no payroll records for the period since it became signatory. The auditor has since reviewed JLH bank statements and confirmed your statement.

4

In an effort to establish the type of work performed by your non-signatory company, Hicks Interiors, Inc., an audit was performed which revealed $116,995.86 due and owing in delinquent or unreported fringe benefit contributions.

You recently submitted challenges to the audit liability, yet failed to include any documentation to support your allegations. After reviewing the matter, I have the following questions which remain unanswered:

(1) JLH Interior Construction became signatory to the Mid-Central Illinois District Council of Carpenter's <u>commercial</u> work agreement in September of 1998. A separate <u>residential</u> agreement was signed by JLH Interior Construction in March 2005. Unless you properly cancelled the commercial work agreement according to the procedures outlined in the agreement, you were obligated to perform all commercial work through JLH Interior Construction. If no such cancellation has been made, all commercial work performed by the employees of Hicks Interiors, Inc. during the audit period would be due and owing. Please advise as to whether you cancelled the commercial work agreement and produce copies of any and all letters to the local union reflecting this cancellation.

(2) As discussed above, any and all residential work performed by the employees of Hicks Construction, Inc. should have been performed by JLH Interior Construction. This is due to the fact that JLH Construction signed a residential agreement in March 2005. As a result, all residential work performed by employees of Hicks Construction should have been reported to the Fund Office with payment during the audit period.

Be aware that it is no defense to argue that the two companies were "separate" or that one was signatory while the

other was not. An employer who channels covered work through a non-signatory company is liable for each hour of covered work performed by the employees of the non-signatory company. This legal term is often defined as "alter-ego" liability or the operation of a "double-breasted" company due to the fact that a collective bargaining agreement (residential and commercial in this case) was signed by one company, while another non-signatory company performs the work to avoid payment of union dues and fringe benefit contributions.

Letter.

Count I of the Amended Complaint alleges that JLH is liable for the unpaid contributions disclosed in the audit. The Funds allege that JLH owed $86,781.23 in unpaid contributions for the Audit Period. Count I asks for a judgment against JLH in the sum of $116,995.86, consisting of the $86,781.23 in unpaid contributions, plus $17,356.59 in liquidated damages, $11,982.55 in interest, and attorney fees. 29 U.S.C. § 1132(g)(2). Count II asks the Court to enjoin JLH to file reports, for the time from the end of the Audit Period to the date of judgment; remit contributions owed to date of judgment, plus liquidated damages and interest; and, thereafter, to comply with their ongoing obligations to the Funds. Count III alleges that HCI and JLH were a single employer for purposes of ERISA, and so, are both liable for the relief sought in Counts I and II.

The Defendants now move to dismiss. The Defendants submit public records from the Illinois Secretary of State showing that HCI and JLH were Illinois corporations in good standing during the Audit Period. <u>Motion to Dismiss Plaintiffs' Amended Complaint (d/e 14)</u>, Exhibits A and B, <u>Corporate File Detail Reports</u>. Thereafter, JLH was voluntarily dissolved on November 27, 2006, and HCI remains active and in good standing. <u>Id.</u>

## ANALYSIS

The Amended Complaint alleges that JLH was obligated to make contributions as a party to the CBA, but JLH did not have payroll records for any employees during the Audit Period. The Amended Complaint, however, also alleges that HCI and JLH were a single employer, and so, JLH and HCI were both obligated to file reports and make contributions for work performed during the Audit Period. The Letter, incorporated into the Amended Complaint, also asserted that HCI was a corporate alter ego of JLH, designed to avoid JLH's obligation to pay contributions to the Funds, and so, was obligated to make contributions to the Funds on that basis as well.

The alter ego theory "focuses on 'the existence of a disguised continuance of a former business entity or an attempt to avoid the

7

obligations of a collective bargaining agreement, such as through a sham transfer of assets.'" Central States, Southeast and Southwest Areas Pension Fund v. Sloan, 714 F.Supp. 943, 946 (N.D. Ill. 1989) (quoting Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 24 (1st Cir. 1983)).  The doctrine also applies if the employer attempts to use a sham corporation to escape obligations under a CBA, including the obligation to make contributions to ERISA qualified employee welfare plans.  Baker v. Caravan Moving Corporation, 561 F.Supp. 337, 339 (N.D. Ill. 1983).  When read in the light most favorable to the Funds, the allegations in the Amended Complaint, if true, could establish either that HCI was a continuation of JLH or that the owners of the two entities used the two corporate shells as a sham to avoid the obligations under the CBA, including their obligations to the Funds.

The single employer doctrine holds that two corporations are considered a single employer for purpose of obligations under a collective bargaining agreement, including payment of contributions to ERISA qualified plans, if the two are, in fact, operated as a single enterprise. Factors to determine this issue include: interrelation of operations, common management, centralized control of labor relations, and common ownership.

Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256 (1965); Moriarty v. Svec, 164 F.3d 323, 332 (7th Cir. 1998).  The Funds allege that all of these factors exist with respect to HCI and JLH.  In addition, the Secretary of State's records indicate that during the Audit Period: (1) HCI and JLH had the same address; (2) Michael Hicks was the agent and president of HCI; (3) Jill Hicks was the agent and president of JLH; (4) Michael Hicks and Jill Hicks had the same address; and (5) the Hicks' address was the same as the address of the two corporations.  The allegations in the Amended Complaint, together with the Secretary of State's records, when read in the light most favorable to the Funds, could show that HCI and JLH were a single employer during the Audit Period, and so, both were liable to make contributions and comply with the other requirements of the plans operated by the Funds.  The Funds, therefore, state a claim.

The Defendants argue that the Funds admit in the Amended Complaint that HCI and JLH are not a single employer.  The Defendants cite the Letter in which the Funds' attorney states that the audit confirmed Michael Hicks' representation that JLH never got off the ground.  The Defendants argue that the Funds thereby admit that JLH was not engaged

9

in an enterprise at all, and so could not be in a common enterprise with HCI. The statement in the Letter does not concede that much. When read in the light most favorable to the Funds, the Letter only concedes that the audit confirmed that JLH had no bank records. JLH may still have operated.[2] The Letter also recites that JLH signed commercial and residential work agreements in 1998 and 2005. Thus, the Letter indicates that JLH existed during that period of time. Further, the Secretary of State's records show that JLH was an active corporation in good standing until November 27, 2006. Assuming the Funds' allegations are true, JLH and HCI could still be a single employer during the Audit Period.[3]

The Defendants also argue that the Funds did not allege an alter ego claim. However, the Letter specifically asserted that HCI was liable under the alter ego theory. The Letter is part of the Amended Complaint. Fed. R. Civ. P. 10(c). More importantly, however, parties are not required to plead legal theories. McDonald v. Household Intern., Inc., 425 F.3d 424, 427 (7th

---

[2] The Amended Complaint alleges that JLH and HCI had common employees. JLH may, thus, have used employees paid through HCI to perform work. At this point, the Court does not know, but must draw all reasonable inferences in favor of the Funds.

[3] The Defendants also argue that the Funds must allege that the employees of JLH and HCI are part of the same bargaining unit. This assertion is incorrect. This Court does not need to decide representational issues to impose liability for contributions to ERISA qualified plans. Moriarty v. Svec, 164 F.3d at 334.

Cir. 2005). The issue is whether the Funds alleged a claim which would entitle the Funds to recover under any appropriate legal theory, including the alter ego theory. The allegations in the Amended Complaint and the exhibits, if true, show that the same individuals controlled JLH and HCI; those individuals caused JLH to sign the CBA; and those individuals then channeled the work through the non-union HCI, and so, did not pay contributions to the Funds or otherwise comply with the CBA. These allegations, if true, could convince a finder of fact that the owners of the two entities created JLH as a sham so that they could claim to be a union operation when it suited them, but then channeled the work to HCI to avoid their obligations under the CBA. The Funds have alleged sufficient facts which would support a claim under the alter ego theory.

THEREFORE, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (d/e 14) is DENIED. The Defendants are directed to file an answer by November 16, 2007.

IT IS THEREFORE SO ORDERED.

ENTER: October 30, 2007

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE